UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MARIO BAUTISTA,

       Plaintiff,

  -v-                                             No.  19 CV 3963-LTS-RWL

ABC CORP d/b/a OCEAN RESTAURANT,
JOHN DOE, "LIN" DOE,

       Defendants.

--------------------------------------------------------x

<u>AMENDED MEMORANDUM OPINION AND ORDER</u>

        Plaintiff Mario Bautista ("Plaintiff") has moved for default judgment against Defendants ABC Corp d/b/a Ocean Restaurant, John Doe, and "Lin" Doe, (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2), on claims arising pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207 <u>et. seq.</u> and New York Labor Law (the "NYLL"), N.Y. Lab. Law § 160 <u>et. seq.</u>  (Docket Entry nos. 26, ("Pl. Memo.")) Defendants have not formally appeared or responded to Plaintiff's claims.  The Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction of the NYLL claims pursuant to 28 U.S.C. § 1367(a).

        The Court has reviewed Plaintiff's submissions carefully and, for the following reasons, grants Plaintiff's motion for default judgment as to all counts against Defendant ABC Corp.  All of Plaintiff's claims against Defendants John Doe and "Lin" Doe are dismissed without prejudice.

BACKGROUND

The following recitation of facts is drawn from the Complaint (Docket Entry no. 1 ("Complaint")), as well as from uncontroverted documentary evidence filed in support of the instant motion practice. In light of Defendants' failure to respond to the Complaint, the well-pleaded factual allegations contained therein are deemed admitted. See Fed. R. Civ. P. 8(b)(6); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability"). Plaintiff's factual proffers in support of the instant motion are uncontroverted. (Docket Entry no. 26.)

ABC Corp d/b/a Ocean Restaurant is a Chinese-style restaurant and domestic business corporation operating under the laws of the State of New York. (Complaint, at ¶ 21.) Its principal place of business is 393 Malcolm X Boulevard in New York City. (Id.) John Doe is alleged to be the owner, officer, director, and/or managing agent of ABC Corp. (Id. at ¶ 13.) "Lin" Doe is allegedly a stockholder of ABC Corp and makes all business decisions for the organization. (Id. at ¶ 14.)

Plaintiff was allegedly employed as a delivery worker for ABC Corp from about October 24, 2014, to March 2016. (Complaint, at ¶ 7.) During the winter months of Plaintiff's employment, he worked seven days per week. (Complaint, at ¶ 22.) His schedule was Monday through Thursday from 11:00 AM to 11:00 PM, Friday and Saturday from 11:00 AM to 1:00 AM, and Sunday from 12:00 PM to 11:00 PM. (Id.) He was provided an hour break. Plaintiff alleges that he worked approximately 81 hours per week during the winter months. (Id.) He worked the same schedule during the summer months, except that on Tuesdays he worked from 5:00 PM to 11:00 PM. (Id. at ¶ 23.) Plaintiff alleges that he worked approximately 74 hours per week during the summer months. (Id.) He claims he was paid $300 per week with no overtime

compensation, regardless of the total hours he worked.  (Id. at ¶ 24.)  Around May 25, Plaintiff received a raise and was paid $350 per week, with no overtime compensation.  (Id. at ¶ 25.)  Plaintiff was paid in cash throughout his employment.  (Id. at ¶ 26.)  Plaintiff also alleges that Defendants requested he obtain an electric bicycle in order to make deliveries faster, which he purchased for $1,450 and spent approximately $100 per month to maintain and repair.  (Complaint, at ¶ 27.)  Plaintiff claims that he was not reimbursed by Defendants for these expenses.  (Id.)

Plaintiff served the Summons and Complaint in this action upon Defendant ABC Corp on May 14, 2019, by delivery to the Office of the Secretary of State of New York.  (Docket Entry no. 5.)  Plaintiff also served the Summons and Complaint upon Defendants on May 21, 2019, by personal service at the ABC Corp restaurant to Defendants' co-worker.  (Docket Entry nos. 18, 19.)  To date, Defendants have not filed a response nor formally appeared.  A certificate of default was issued by the Clerk of Court as to ABC Corp on September 12, 2019, and as to John and "Lin" Doe on September 16, 2019.  (Docket Entry nos. 17, 22).  Plaintiff moved for default judgment on September 20, 2019.  (Docket Entry no. 25).[1]

---

[1]   The Complaint asserted claims both individually and on behalf of an FLSA Collective.  However, Plaintiff has asserted only individual claims in his motion for default judgment.  (Docket Entry nos. 25, 26.)  Furthermore, no class has been certified in this action and no joinders have been filed.  The request for collective action is therefore waived because Plaintiff failed to reiterate his request in the motion for default judgment.  See cf. Galicia v. 63-68 Diner Corp., No. 13-CIV-3689 (PKC), 2015 WL 1469279, at *1 (E.D.N.Y. Mar. 30, 2015) ("Because Plaintiff now seeks a default judgment and has not reiterated his request for collective action in the present motion, the Court considers Plaintiff's collective action request waived."); see also Lopic v. Mookyodong Yoojung Nakjie, Inc., No. 16-CIV-4179 (KAM) (CLP), 2017 WL 10845064, at *2 (E.D.N.Y. Sept. 30, 2017) (entering a default judgment only in favor of the named plaintiff, where, despite "a clear intent in his complaint to proceed as a collective action," the plaintiff did not assert any cause of action except his own in the motion for default judgment.)  Accordingly, the Court's decision applies only to Plaintiff Bautista.

DISCUSSION

In determining whether to grant a motion for default judgment, courts within this district first consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Santana v. Latino Express Restaurants, Inc., 198 F. Supp. 3d 285, 291 (S.D.N.Y. 2016) (citation omitted); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of lower court grant of a default judgment).

All three factors weigh in Plaintiff's favor as to his claims against Defendant ABC Corp.[2]  First, a defendant's failure to appear and respond is generally deemed to satisfy a finding of willfulness.  See Fermin v. Las Delicias Peruanas Restaurant, Inc., 93 F. Supp. 3d 19, 31 (E.D.N.Y. 2015) (finding defendant's nonresponse sufficient to demonstrate willfulness). Here, Plaintiff properly served Defendant ABC Corp with the summons and complaint and notice of this motion practice (Docket Entry nos. 5, 29), but Defendant ABC Corp did not

---

[2]  Default judgment against Defendants John and "Lin" Doe is not appropriate because they have not been properly identified and served.  "…[I]n civil cases, where a party fails to respond, after notice the court is ordinarily justified in entering a judgment against the defaulting party." Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984). "Therefore, the court should consider whether the plaintiff has shown that the defendant had notice of the action and an opportunity to defend against it." CIT Bank, N.A. v Paganos, No. 14-CIV-3987 (CBA) (VMS), 2015 WL 13731361, at *3 (E.D.N.Y. Sept. 25, 2015).  Here, service was not proper for Defendants John Doe and "Lin" Doe.  "[D]efault judgments cannot be entered against unnamed or fictitious parties because they have not been properly identified and served." Id. (citation omitted); see also id. ("Plaintiff did not (and cannot) secure entry of a default judgment against a John Doe defendant.")  Therefore, default judgment is not appropriate for any claims against Defendants John and "Lin" Doe.

answer, make an appearance, or request an extension of time in which to respond.  Nor has Defendant ABC Corp responded to this motion practice.  Second, where a defendant fails to answer the complaint, courts are unable to determine whether the defendant has a meritorious defense.  See Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013) ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations"); see also Indymac Bank, F.S.B. v. Natl. Settlement Agency, Inc., No. 07-CIV-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) ("the Court is unable to determine whether these defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court).[3]  Third, Plaintiff will be prejudiced and left with no other recourse if denied judgment by default, as Defendant has willfully failed to respond to the Complaint and the present motion.

The Court must next "decide whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action asserted."  Santana, 198 F. Supp. 3d at 291.  If so, the Court "must go on to 'determine the appropriate amount of damages, which involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages.'"  Id. (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

---

[3]   The FLSA statute of limitations, which is at most three years, see 29 U.S. Code § 255(a), is an affirmative defense that is forfeited if not raised in a defendant's answer or an amendment thereto.  See Gunawan, 897 F Supp 2d at 87; see also Day v. McDonough, 547 U.S. 198, 199, 126 S.Ct. 1675, 1677 (2006) ("A statute of limitations defense is not jurisdictional, therefore courts are under no obligation to raise the matter sua sponte").

Counts One and Three: FLSA Minimum Wage and Overtime Wage Violations

Plaintiff alleges that Defendant ABC Corp had a policy and practice of failing to pay him the statutory minimum wage for at least some of the hours that he worked and that Defendant ABC Corp failed to pay him overtime compensation for all hours that he worked in excess of forty hours per workweek.  To make a prima facie showing that Defendant ABC Corp violated the minimum wage and overtime provisions of the FLSA, Plaintiff must first show that he was a covered employee under the FLSA in that he was either (1) personally engaged in interstate commerce, or (2) employed in an enterprise engaged in interstate commerce (the "enterprise theory").  See Boekemeier v. Fourth Universalist Society in City of New York, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000); see also 29 U.S.C. §§ 206(a), 207(a).  Under the enterprise theory, the Second Circuit has adopted a multi-factor "economic reality" test to determine whether an employment relationship exists.  The test examines whether the alleged employer-defendant "(1) had the power to hire and fire the employee[], (2) supervised and controlled [his] work schedule[] or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Irizarry v. Catsimatidis, 722 F.3d 99, 105 (2d Cir. 2013) (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir. 1984)).

Plaintiff has alleged facts pertinent to three of the four economic reality test factors.  Specifically, Plaintiff alleges that Defendant ABC Corp had the power to hire him, controlled his work schedule, determined his wages, and paid him in cash.  (Complaint, at ¶¶ 7, 14.)  See Guardado v. 13 Wall St., Inc., No. 15-CIV-02482 (DRH)(SIL), 2016 WL 7480358, at *3 (E.D.N.Y. Dec. 2, 2016) (holding that plaintiff has sufficiently proven the employer-employee relationship by stating that he worked in a restaurant owned by defendant, that defendant paid him on a weekly basis by cash and check, and that defendant docked his pay if he

missed work); see also Fermin, 93 F. Supp. 3d at 36 (finding liability where employer defendants satisfied three of the four economic reality test factors). Plaintiff further alleges that Defendant ABC Corp failed to keep full and accurate employment records. (Complaint ¶ 36); see Fermin, 93 F. Supp. 3d at 36 (finding an employment relationship even though defendant did not keep employment records, noting that failure to do so is a violation of the FLSA). Accordingly, the Court finds that Plaintiff has carried his burden of proffering uncontroverted facts demonstrating that he had an employment relationship with Defendant ABC Corp within the meaning of the FLSA.

Plaintiff must also demonstrate that Defendant ABC Corp is an "enterprise engaged in interstate commerce." Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2016). To be an enterprise engaged in interstate commerce, the defendant-employer must have (a) an annual gross sales volume of at least $500,000, and (b) "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. §§ 203(s)(1)(A)(i)-(ii); see Valdez v. H & S Restaurant Operations, Inc., No. 14-CIV-4701 (SLT) (MDG), 2016 WL 3079028, at *2 (E.D.N.Y. Mar. 29, 2016). Here, Plaintiff alleges, and Defendant has not denied, that Defendant ABC Corp is "engaged in interstate commerce and/or in the production of goods for commerce . . . because they purchase food, supplies and restaurant equipment from out of the state of New York and internationally." (Complaint, at ¶ 10.) Along with Plaintiff's allegation that Defendant is a Chinese-style restaurant with gross annual sales of over $500,000 – with sales exceeding $2,000 per day – these uncontroverted allegations are sufficient to establish that Defendant ABC Corp is an enterprise engaged in interstate commerce. See Lopic, 2017 WL 10845064, at *4 (finding sufficient plaintiff's mere recitation of statutory requirements because plaintiff alleged

that defendant operated a Korean restaurant and the court could reasonably infer that some materials, such as ingredients or kitchen utensils, moved in interstate commerce). Even though "inferring an interstate commerce nexus from nothing more than the general description of an employer's business . . . is in tension with both the presumption against default and the purpose of [FRCP 55,]" a defendant forfeits any contention that the FLSA did not apply by defaulting and failing to contest the issue. Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 85-86 (E.D.N.Y. 2012). Accordingly, the Court finds that Defendant ABC Corp is "an enterprise engaged in interstate commerce" under the FLSA. Plaintiff's minimum wage and overtime claims are therefore covered under the federal statute.[4]

Counts Two and Four: NYLL Minimum Wage and Overtime Wage Violations

The NYLL and FLSA tests to determine whether an employment relationship exists are similar and usually yield the same result. "If a court in this Circuit has already found liability under the FLSA, it will routinely impose liability for a violation of the NYLL." Lopic, 2017 WL 10845064 at *5. To determine whether an employment relationship exists under the NYLL, courts examine the degree of control exercised by the alleged employer over the results produced or the means used to achieve those results. Meyer v. U.S. Tennis Ass'n, 607 F. App'x 121, 122-123 (2d Cir. 2015). There are five factors relevant to this analysis: whether the worker "(1) worked at his own convenience, (2) was free to engage in other employment, (3) received

---

[4] The FLSA does not extend minimum wage and overtime protections to "any employee employed in a bona fide executive, administrative, or professional capacity ... or in the capacity of [an] outside salesman." 29 U.S.C. § 213(a)(1). Plaintiff does not fall into this FLSA employee exemption because he was working as a delivery driver for Defendant ABC Corp, similar to the non-exempt positions of waitress, kitchen helper, or cook. See Fermin, 93 F. Supp. 3d at 3.

fringe benefits, (4) was on the employer's payroll, and (5) was on a fixed schedule." Id. at 123 (citation omitted).

Here, Plaintiff alleges that he did not work at his own convenience because had to start and finish his shifts at specified times and was given scheduled breaks. See Mahoney v. Amekk Corp., No. 14-CIV-4131 (ENV) (VMS), 2016 WL 6585810, at *7 (E.D.N.Y. Sept. 30, 2016) (finding plaintiff did not work at her own convenience because she had to start her shift at a bar at a specific hour and end at a specific hour). Plaintiff alleges that he was employed by Defendant from October 2014, to March 2016, worked set hours for 74 to 81 hours per week, and received weekly wages in cash of $300 - $350. (Complaint, at ¶¶ 22-25.) Thus, Plaintiff has demonstrated that he was on Defendant's payroll and worked a fixed schedule. While the complaint does not allege whether Plaintiff was free to take on another job or was provided fringe benefits, the Court finds that the complaint's allegations suffice to establish that Defendant ABC Corp exercised control over Plaintiff's work and therefore was his employer under the NYLL.

Plaintiff has also established Defendant's liability for minimum wage and overtime violations under the FLSA and the NYLL. During Plaintiff's employment, the applicable hourly minimum wage under the FLSA was $7.25 per hour. 29 U.S.C. §206(a)(1)(C). Under the NYLL, the applicable minimum wage was $8.00 per hour from October 24, 2014, to December 30, 2014; $8.75 per hour from December 31, 2014, to December 30, 2015; and $9.00 per hour from December 31, 2015, to March 31, 2016. N.Y. Lab. Law § 652(1).

Plaintiff was paid $300 per week from October 24, 2015, until May 2015, when he was paid $350 per week until his termination on March 31, 2016. (Docket Entry no. 27, ("Pl. Aff."), at ¶¶ 5-6.) Plaintiff alleges that he worked 81 hours per week during the winter months

and 74 hours per week during the summer months.  (Pl. Aff., at ¶¶ 3-4.)[5]  Plaintiff's counsel has calculated Plaintiff's hourly wage by dividing his weekly salary by 40 hours to arrive at the following hourly wages: $7.50 for October 24, 2015, to April 30, 2015, ($300/40) and $8.75 for May 1, 2015 to March 31, 2016 ($350/40).  (Docket Entry no. 28-3.)  These rates fall below the minimum wage rates required under the NYLL for most of the employment period.  Plaintiff's counsel determined unpaid minimum wages by calculating the difference between the applicable New York minimum wage rate and Plaintiff's hourly rate, multiplying that difference by 40 hours per week, and then multiplying that product by the total number of weeks worked.  Id.  According to counsel's calculation, Plaintiff is owed minimum wage payments in the following amounts: $200 for October 24, 2014, to December 31, 2014, ($0.50 x 40 hours x 10 weeks); $850 for January 1, 2015, to April 30, 2015; and $130 for January 1, 2016, to March 31, 2016.  The Court concurs in these calculations, and Plaintiff is therefore owed a total of $1,180 for minimum wage violations.

        The FLSA and NYLL both require Defendant to compensate Plaintiff for any hours worked in excess of forty hours per week at a rate of no less than one-half times the regular rate of pay.  29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 146-1.4.  Plaintiff worked over forty hours per week throughout his employment, but his pay did not vary with the number of hours he worked.  See Rodriguez, 784 F. Supp. 2d at 122 (finding overtime violation where "the

---

[5]    The Court credits Plaintiff's undisputed estimates of hours worked and wages earned.  Under the FLSA and NYLL, Plaintiff "has the burden of proving that he performed work for which he was not properly compensated."  Fermin, 93 F. Supp. 3d at 41 (citation omitted).  If his employer failed to keep records of hours and wages, then Plaintiff's estimates based on his own recollection may constitute sufficient evidence.  Kuebel v. Black and Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011).  The employer may provide contrary evidence, but if the employer fails to do so, the court may "award damages to the employee, even though the result be only approximate."  Id.

complaint alleges that Plaintiffs worked more than 40 hours a week and were not paid time-and-a-half for their overtime hours"). Accordingly, the Court finds Defendant ABC Corp failed to pay Plaintiff overtime premiums in violation of both the FLSA and NYLL. However, Plaintiff may only recover once, and courts generally rely on whichever statute provides the greater recovery. Quiroz v. Luigi's Dolceria, Inc., No. 14-CIV-871 (VVP), 2016 WL 2869780, at *3-4 (E.D.N.Y. May 17, 2016). Here, both the FLSA and NYLL yield the same result. Overtime compensation is determined by multiplying the number of hours Plaintiff worked a week in excess of 40 hours by 1.5 times Plaintiff's regular rate of pay: Plaintiff's weekly salary divided by 40 hours per week. See, e.g., Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 338 (S.D.N.Y. 2005); see also 29 U.S.C.A. § 207(a)(1). Where Plaintiff's regular rate of pay was less than the minimum wage however, the Court calculates overtime compensation rate by multiplying 1.5 times the minimum wage by Plaintiff's hours in excess of 40 hours a week. See, e.g., Tian Xi Yang v. Shanghai Heping Restaurant, Inc., No. 20-CIV-815 (JGK) (SDA), 2021 WL 468402, at *4 (S.D.N.Y. Jan. 14, 2021) (calculating overtime wages using the minimum wage). Here, Plaintiff's overtime rate was $12.00 for October 24, 2014, to December 31, 2014 (1.5 x $8.00), $13.13 from January 1, 2015, to December 31, 2015 (1.5 x $8.75), and $13.50 from January 1, 2016, to March 31, 2016 (1.5 x $9.00). These overtime rates are multiplied by the number of overtime hours Plaintiff worked each week, and by the total number of weeks Plaintiff worked. Using the regular minimum rate of pay, Plaintiff's unpaid overtime amounts to: $4,920.00 for October 24, 2014, to December 31, 2014, ($12.00 x 41 hours per week x 10 weeks); $9,151.61 for January 1, 2015, to April 30, 2015; $8,928.40 for May 1, 2015, to September 15, 2015; $8,074.95 for September 16, 2015, to December 31, 2015; and $7,195.50

for January 1, 2016, to March 31, 2016.  Accordingly, Plaintiff is entitled to $45,465.96 in overtime compensation.

Counts Five, Seven, and Eight: Spread-of-hours Pay, Wage Notice Requirement, and Pay Stub Requirement Violations Under the NYLL

The NYLL provides that employees receive one additional hour of pay at the basic minimum hourly rate for each day that the spread-of-hours exceeds ten. 12 N.Y.C.R.R. § 146-1.6(a).  The "spread-of-hours" is the "length of the interval between the beginning and end of an employee's workday."  Id.  Here, Plaintiff claims that his workday spanned over ten hours a day, seven days a week during the winter months, (Docket Entry no. 28, at ¶ 4), and six days a week during the summer months.  Id.  Plaintiff proffered that most of his workdays lasted more than ten hours a day, but that Defendants did not pay him an additional hour's pay at the minimum wage.  (Docket Entry no. 27, at ¶ 8.)  Accordingly, Defendant ABC Corp is liable for spread-of-hours damages.  The spread-of-hours pay owed is calculated by multiplying the applicable New York minimum wage rate by the total number of hours per week that the spread-of hours exceeded ten, multiplied by the total number of weeks worked.  Here, Defendant ABC Corp is liable for spread-of-hours damages in the following amounts: $840 for October 24, 2014, to December 31, 2014, ($12 x 7 hours per week x 10 weeks); $1,562.47 for January 1, 2015, to April 30, 2015; $1,575.6 for May 1, 2015, to September 15, 2015; $1,378.65 for September 16, 2015, to December 31, 2015; and $1,228.5 for January 1, 2016, to March 31, 2016.  (See Docket Entry no. 28-3.)  Accordingly, Plaintiff is entitled to $6,585.22 for spread-of-hours violations.

Under New York's Wage Theft Prevention Act ("WTPA"),[6] an employer must provide (1) at the time of hiring, a notice containing specific information including but not limited to "the rate or rates of pay . . . whether [the position is] paid by the hour, shift, day, week, salary . . . the physical address of the employer's main office . . . the telephone number of the employer . . ."; and (2) "a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages" as well as pay rate information. N.Y. Lab. Law §§ 195-1(a), 195-3. Here, Plaintiff alleges, and Defendant ABC Corp has not denied, that Defendants did not provide a wage notice at the time of hire and that he was paid weekly in cash but did not receive a wage statement for each of his pay periods. (Docket Entry no. 27, at ¶¶ 9-10.) Accordingly, the Court finds that Defendant ABC Corp failed to provide a wage notice at the time of hiring and failed to meet the New York pay stub requirements under the NYLL.

The WTPA provides that an employee may recover $50 each workday, after February 27, 2015, for an employer's failure to provide wage notice at the time of hiring, up to a maximum of $5,000. N.Y. Lab. Law § 198(1-b). For an employer's failure to provide wage statements, an employee may recover $250 each workday, not to exceed $5,000. N.Y. Lab. Law § 198(1-d). Plaintiff worked more than 100 days from February 27, 2015, until his termination on March 31, 2016, and is therefore entitled to the maximum award of $10,000 for Defendant ABC Corp's time of hire wage notification violation and New York pay stub requirement violation.

---

[6] Although Plaintiff does not refer to the WTPA in the Complaint, instead bringing his time of hire wage notice and New York pay stub claims under the NYLL, this Court holds that Plaintiff adequately stated a claim under the WTPA. (Complaint, at ¶¶ 82, 87); see Inclan v. New York Hosp. Group, Inc., 95 F Supp 3d 490 (S.D.N.Y. 2015) (holding Plaintiffs adequately stated a claim under the WTPA, even though the claims referred generally to the New York Labor Law rather than the WTPA).

Count Six: Expenses Relating to Tools of the Trade

Plaintiff seeks reimbursement for expenses incurred purchasing and maintaining an electric bicycle at the direction of his employer. "Vehicles such as bicycles, motorcycles, and mopeds are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment." Guan Ming Lin v. Benihana Nat'L Corp., 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) (citing Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 257–58 (S.D.N.Y. 2008) (finding that plaintiff delivery persons' bicycles were tools of the trade because employer required all delivery persons to own and maintain "vehicular transportation" as a condition of their employment)). Further, "[i]f it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the [FLSA] in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the [FLSA]." Id. (citing 29 C.F.R. § 531.35).

Plaintiff proffers that Defendants directed him to purchase an electronic bicycle to make faster deliveries. (Docket Entry no. 27, at ¶ 13.). The Court infers that the bicycle was thus a requirement for the job. See, e.g., He v. Home on 8th Corp., 09-CIV-5630 GBD, 2014 WL 3974670, at *9 (S.D.N.Y. Aug. 13, 2014) (Plaintiffs were "effectively required" to have bicycles to fulfill their delivery responsibilities across a large geographic area of New York City). Plaintiff alleges, and Defendant ABC Corp has admitted by virtue of default, that he purchased the bicycle for $1,450 and spent $100 each month in maintenance and repairs over 17 months. Accordingly, Plaintiff is granted $3,150 for the purchase and maintenance of the electronic bicycle.

Liquidated Damages

Plaintiff seeks liquidated damages under both the FLSA and NYLL.  "Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages" for violations of the FLSA's minimum wage and overtime provisions.  Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (citing 29 U.S.C. § 216(b)).  Similarly, the NYLL provides for liquidated damages in addition to actual damages in certain instances.  See id. (citing N.Y. Labor Law §§ 198(1–a), 663(1)).  However, Plaintiff cannot recover liquidated damages under both statutes.  See Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).  Accordingly, this Court grants Plaintiff liquidated damages under the NYLL. See Rodriguez v. Queens Convenience Deli Corp., No. 09–CIV–1089, 2011 WL 4962397 (KAM) (SMJ), at *2 (E.D.N.Y. Oct. 18, 2011) (noting that "plaintiff may recover under the statute which provides the greatest amount of damages") (citation omitted).  Plaintiff is entitled to liquidated damages equal to his unpaid minimum wages, overtime compensation, and spread of hours pay which equals $53,231.18.

Pre-judgment Interest

Pre-judgment interest on NYLL damage awards is calculated at 9% per year.  N.Y.C.P.L.R. § 5004.  For cases in which damages were "incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y.C.P.L.R. § 5001(b).  Plaintiff's counsel has suggested June 12, 2015, as the intermediate date, which marks the approximate half-way point in Plaintiff's employment.  (Docket Entry no. 28-3.)  The Court finds this mid-

point date to be a reasonable intermediate date and, accordingly, the Court grants Plaintiff interest on the $53,231.18 damages award from June 12, 2015, the intermediate date, through the date on which judgment is entered, at the rate of 9% per year.  Plaintiff is therefore granted pre-judgment interest in the amount of $27,826.05.

Attorney's Fees

The party seeking reimbursement of attorney's fees bears the burden of proving the reasonableness and the necessity of the hours spent and rates charged.  See generally N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  Requests for attorney's fees in this Circuit must be accompanied by contemporaneous time records that show the date the work was done for each attorney, "the hours expended, and the nature of the work done."  Id.; see also Scott v. City of N.Y., 643 F.3d 56, 58–59 (2d Cir. 2011).  In support of his claim for attorney's fees and costs, Plaintiff submitted an invoice.  (Docket Entry no. 28-2.)  Plaintiff's counsel, Ms. Liu, seeks an hourly rate of $300.  Plaintiff's prior counsel, Ms. Duarte, seeks an hourly fee of $250.00, and Mr. Huang an hourly fee of $350.  Id.  The rates requested are reasonable.  See Kontis v. Karahalis, 409 Fed. Appx. 418, 422-23 (2d Cir. 2011) (collecting cases and affirming district court order holding that the prevailing rates for experienced attorneys range from approximately $300 to $400 per hour).  The invoice reflects that Plaintiff's counsel spent a total of 23.9 hours litigating this case.  The time allotted for each task comprising the 23.9 hours appears reasonable.  Plaintiff is therefore granted the $6,845 requested for attorney's fees and $610 in administrative costs.  (See Docket Entry no. 28-3.)

Postjudgment Interest

Pursuant to 28 U.S.C. § 1961, post-judgment interest is mandatory for awards in civil cases as of the date judgment is entered.  Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n, 852 F.3d 217, 223 (2d Cir. 2017) (citation omitted).  Accordingly, Plaintiff is awarded post-judgment interest on the total damages award, at the rate set forth in 28 U.S.C. § 1961, calculated from the date on which the Clerk of Court enters judgment until the date of payment.  See Fermin, 93 F. Supp. 3d at 53 (collecting cases).

CONCLUSION

For the reasons stated, Plaintiff's motion for default judgment is granted as against Defendant ABC Corp only.  Plaintiff is awarded total damages, prejudgment interest, attorney's fees and costs in the amount of $154,814.67, comprising: (1) $1,180 minimum wage compensation; (2) $45,465.96 in overtime compensation; (3) $6,585.22 spread-of-hours compensation; (4) $3,150 electronic bicycle purchase and maintenance; (5) $53,231.18 liquidated damages; (6) $27,826.05 pre-judgment interest; (7) $10,000 WTPA damages; (8) $6,845 attorney's fees; and (9) $610 in costs.

Plaintiff's motion for default judgment is denied as against the individual "Doe" defendants, who have not been identified or served, and this case is dismissed without prejudice as against those defendants.

The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

This Memorandum Opinion and Order resolves Docket Entry no. 25.

SO ORDERED.

Dated: New York, New York
April 1, 2021

     /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge