UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MARIO BAUTISTA,

       Plaintiff,

  -v-                                              No. 19-CV-3963-LTS

ABC CORP. d/b/a OCEAN RESTAURANT,
JOHN DOE, "LIN" DOE,

       Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

       Mario Bautista ("Plaintiff" or "Mr. Bautista") initiated this action on May 2, 2019, asserting that ABC Corp. d/b/a Ocean Restaurant ("ABC Corp."), John Doe, and "Lin" Doe (together, "Defendants") failed to pay Plaintiff minimum wage and overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. section 201 et seq. ("FLSA"), and the New York Labor Law, section 650 et seq. ("NYLL"). (See docket entry no. 1 ("Complaint").) Judgment was entered in this case in favor of Mr. Bautista against Defendant ABC Corp. on April 1, 2021. (Docket entry no. 38.) Before the Court is Plaintiff's motion to enforce the judgment against nonparties C&L New Ocean Inc. ("New Ocean"), Chong Ri Chen, and Ching Y Chen. (Docket entry no. 40.)

       The Court has reviewed Plaintiff's submissions carefully and, for the following reasons, denies Plaintiff's motion to enforce the judgment in its entirety.

BACKGROUND

Plaintiff was allegedly employed as a delivery worker for ABC Corp., a Chinese-style restaurant and domestic business corporation, from about October 24, 2014, to March 2016. (Complaint ¶¶ 7, 21.) Although Plaintiff worked approximately 74 to 81 hours per week, Defendant ABC Corp. allegedly failed to pay him the statutory minimum wage for at least some of the hours worked and also failed to pay him overtime compensation. (Id. ¶¶ 22-25.) Plaintiff served the Summons and Complaint in this action upon Defendant ABC Corp. on May 14, 2019, by delivery to the Office of the Secretary of State of New York (docket entry no. 5) and also, on May 21, 2019, by personal service at the ABC Corp. restaurant to "Lin" Doe and John Doe. (Docket entry nos. 18, 19.) After Defendants failed to appear in this action or file any response to Plaintiff's allegations, a certificate of default was issued by the Clerk of Court as to ABC Corp. on September 12, 2019, and as to John and "Lin" Doe on September 16, 2019. (Docket entry nos. 17, 22.) Plaintiff moved for default judgment on September 20, 2019 (docket entry no. 25), and the Court granted Plaintiff's motion against Defendant ABC Corp.[1] on April 1, 2021, awarding Plaintiff total damages, prejudgment interest, attorney's fees and costs in the amount of $154,814.67 (the "monetary award" or "money judgment") (docket entry no. 37).

On October 31, 2022, Plaintiff filed a motion to enforce the money judgment against nonparties C&L New Ocean Inc., Chong Ri Chen, Ching Y Chen (the "Nonparties"). (Docket entry no. 40.) Plaintiff requests that the Court "issue an order enforcing the Default Judgment entered against ABC Corp. in the amount of $154,814.67, plus a 15% increase in the Judgment amount, plus any supplemental judgment for attorneys' fees and costs" against the

---

[1] Plaintiff's motion for default judgment was denied as against the individual "Doe" defendants, who were not identified or served, and the case was dismissed without prejudice as against those defendants. (Docket entry no. 37.)

Nonparties because "there is a clear and undeniable alter ego relationship between ABC Corp., New Ocean, Chong Ri Chen and Ching Y Chen which necessitates that the Default Judgment be entered against all of them." (Docket entry no. 41 ("Pl. Mem") at 2.)  Plaintiff asserts that ABC Corp. operates as a shell company, New Ocean, Chong Ri Chen, and Ching Y Chen possess all of the assets, and the Nonparties "operate the Chinese restaurant" where Plaintiff worked as a delivery person "under the name of Ocean Restaurant." (Id. at 7-8.)  In a contradictory manner, Plaintiff alleges both that he "was employed by ABC Corp" even though that company "never had any assets" (id. at 8) and also that New Ocean was "the company that has employed every employee who has worked at the restaurant since May 2012" (id. at 2).

DISCUSSION

Plaintiff brings this motion pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, which "provides a mechanism for parties to seek the Court's aid in executing its judgments." Plunket v. Estate of Doyle, No. 99-CV-11006-KMW, 2009 WL 73146, at *2 (S.D.N.Y. Jan. 12, 2009).  Because Rule 69(a) requires that "proceedings supplementary to and in aid of judgment or execution . . . accord with the procedure of the state where the court is located[,]" New York law applies.  Fed. R. Civ. P. 69(a).  Section 5225 of the New York Civil Practice Law and Rules permits a court to enter a turnover order to enforce a money judgment, and Section 5225(b) specifically "creates a remedy for judgment creditors in situations where property of a judgment debtor is in the possession or custody of a third party." See Dussault v. Republic of Argentina, 616 F. App'x 26, 27 (2d Cir. 2015); Mitchell v. Garrison Protective Servs., Inc., 819 F.3d 636, 640 (2d Cir. 2016) (Section 5225(b) "creates a procedural mechanism

by which judgment creditors can enforce a money judgment, rather than a new <u>substantive</u> right." (internal citation omitted)).  Section 5225(b) provides:

> Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . . .

Because the jurisdiction of federal courts is limited, "the Court may, at any stage of the proceedings, raise the question of subject matter jurisdiction and dismiss pending litigation if such jurisdiction is found to be lacking."  <u>Universitas Educ., LLC v. Nova Grp., Inc.</u>, No. 11-CV-1590-LTS-HBP, 2015 WL 57097, at *2 (S.D.N.Y. Jan. 5, 2015).  It is well-settled that a court possesses ancillary jurisdiction for the exercise of its inherent power to enforce its own judgments.  <u>See, e.g.</u>, <u>Knox v. Orascom Telecom Holding S.A.E.</u>, 477 F. Supp. 2d 642, 644-45 (S.D.N.Y. 2007).  Indeed, without such authority to enforce a judgment entered by this Court, the "judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution."  <u>Peacock v. Thomas</u>, 516 U.S. 349, 356 (1996) (citation omitted).

    For "the enforcement branch of ancillary jurisdiction however," courts draw a distinction "between post-judgment proceedings to collect an existing judgment and proceedings, such as claims of alter ego liability and veil-piercing, that raise an independent controversy with a new party in an effort to shift liability."  <u>Epperson v. Enter. Express., Inc.</u>, 242 F.3d 100, 105-06 (2d Cir. 2001); <u>see also</u> <u>Peacock</u>, 516 U.S. at 356 (explaining that the exercise of ancillary jurisdiction is proper in proceedings involving "third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the

prejudgment avoidance of fraudulent conveyances"). For example, in Epperson, the Second Circuit explained that the appellants' claims for fraudulent conveyance "were within the scope of the enforcement jurisdiction of the district court" because the appellants sought "only to void the allegedly fraudulent conveyances" of the judgment debtor to the third-party entities, rather than to hold those third parties liable for the existing judgment "as alter egos" of the judgment debtor. 242 F.3d at 107.

Since Epperson was decided, courts in this Circuit have routinely recognized that where "a judgment creditor seeks to void an allegedly fraudulent conveyance from a judgment debtor to a non-party to ensure the collectability of an existing judgment, such proceedings fall within the scope of the ancillary enforcement jurisdiction" of the Court. Cortes v. Juquila Mexican Cuisine Corp., No. 17-CV-3942-RER, 2022 WL 970726, at *8 (E.D.N.Y. Mar. 31, 2022); accord CSX Transp., Inc. v. Island Rail Terminal Inc., 879 F.3d 462, 469 (2d Cir. 2018) (holding that a party "seeking a money judgment against a non-party garnishee may proceed by motion"); Estate of Ungar v. Orascom Telecom Holding S.A.E., 578 F. Supp. 2d 536, 549 (S.D.N.Y. 2008) ("Although the holding of Epperson is not expressly limited to fraudulent conveyance claims, Epperson's reasoning is explicitly premised on the fact that no court should be powerless to enforce its own judgment when a defendant fraudulently conveys assets to avoid that judgment." (internal quotation marks and citation omitted) (emphasis in original)); Advanced Video Techs. LLC v. HTC Corp., No. 11-CV-6604-CM, 2019 WL 4198769, at *11 (S.D.N.Y. Aug. 12, 2019) ("[Section 5225(b)] enables a judgment creditor to initiate special proceedings against transferees to set aside fraudulent transfers made by the judgment debtor." (citation omitted)). Those proceedings "merely seek to enforce a judgment by tracing the assets of the judgment debtor into the hands of the third party," Estate of Ungar, 578 F. Supp. 2d at

550, and do not raise new legal theories to impose liability on a third party. See Peacock, 516 U.S. at 257 ("We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment.").

Courts in this Circuit have declined, however, to exercise jurisdiction over claims that seek to hold a nonparty liable for a judgment where the judgment creditor does not assert that "fraudulent conveyances or wrongful transfers" transpired between the judgment debtor and the nonparty, but instead seeks to reach assets in the hands of a nonparty alleged to be the alter ego of the judgment debtor. See, e.g., Estate of Ungar, 578 F. Supp. 2d at 549-50 (explaining that the "assets at issue are, and always have been, held by" the nonparty to the action, and any determination that the judgment debtor and the nonparty were "really one and the same" corporate entity would be an inappropriate exercise of ancillary jurisdiction); Plunket, 2009 WL 73146, at *4 (explaining that, although section 5225(b) "may be used" to set aside an allegedly fraudulent conveyance, the Court "lacks jurisdiction to consider" a petition to "pierce [the] corporate veil under a theory of equitable ownership and/or . . . dominance and control"); Universitas, 2015 WL 57097, at *3 (declining to exercise jurisdiction over motion seeking turnover of property from third party insurance company); C.G. Holdings, Inc. v. Rum Jungle, Inc., 582 F. Supp. 2d 385, 388-89 (E.D.N.Y. 2008) (collecting cases). Because legal theories premised on alter ego liability "are distinct from the underlying" claims which gave rise to the Court's judgment, they fall outside of the Court's ancillary jurisdiction. C.G. Holdings, 582 F. Supp. 2d at 389 (differentiating alter ego claim from underlying Lanham Act claims that were the basis for the default judgment the plaintiff sought to enforce); Knox, 477 F. Supp. 2d at 648 (declining to exercise jurisdiction over case in which plaintiff sought "to hold nonparties liable

for a judgment on a theory that requires proof on facts and theories different from those underlying the judgment" (citation omitted)); Universitas, 2015 WL 57097, at *3 (explaining that the instant motion relied on a theory for recovery "wholly separate from the theories upon which judgments were entered previously").  Put another way, such proceedings are "not 'ancillary to the judgment'" previously entered.  Peacock, 516 U.S. at 358 (cautioning that proceedings that are "entirely new and original" or where the "relief [sought is] of a different kind or on a different principle than that of the prior decree" are outside the scope of ancillary jurisdiction (internal quotation marks and citations omitted)).

        The Court has carefully reviewed Plaintiff's motion and concludes that this submission falls into the latter category of motions and is therefore outside the scope of the Court's ancillary jurisdiction.  Plaintiff seeks to enforce the default judgment entered against ABC Corp. in this action against the Nonparties on the theory that the Nonparties serve as the "alter ego" of ABC Corp.  (See Pl. Mem. at 6-7.)  Plaintiff asserts that ABC Corp. "has operated as a shell company" to protect the Nonparties, but the Nonparties are the ones who "possess all of the assets and operate the Chinese restaurant" where "Plaintiff worked . . . as a delivery person[.]"  (Id. at 7-8.)  Plaintiff, however, does not assert that any transfer of property was made from the judgment debtor in this case—ABC Corp.—to the Nonparties to avoid this Court's judgment.  Instead, Plaintiff asserts that the Nonparties are the entities that, in actuality, have always held the corporate assets available to satisfy this Court's judgment.  To grant Plaintiff's request for a turnover order against the Nonparties, the Court would need to determine that ABC Corp. and the Nonparties are "really one and the same" corporate entity.  Estate of Ungar, 578 F. Supp. 2d at 550.  Such a determination would require inquiries into the organizational structures,

dealings, and relationships between ABC Corp. and the Nonparties, which are factually and legally unrelated to the theories of liability on which the default judgment in this case is based.

Plaintiff argues that "[w]here a third party is the alter ego of a judgment debtor, then that suffices to entitle it to a turnover order under C.P.L.R. section 5225(b)." (Pl. Mem. at 6.) Plaintiff's premise, however, relies on the assumptions that: (1) a transfer of assets has taken place between the judgment debtor and its alleged alter-ego and, (2) the alter-ego holds property rightly belonging to the judgment debtor. See, e.g., Cortes, 2022 WL 970726, at *8 n.10 (explaining that "[t]o the extent the [p]laintiffs seek to hold the [nonparty] responsible as a successor to or alter-ego of [the judgment debtor], rather than obtain a turnover order for [the judgment debtor's] property in [the nonparty's] possession," jurisdiction would "likely be inappropriate" and "Plaintiffs would need to file a separate suit against [the nonparty]"); Advanced Video Techs., 2019 WL 4198769, at *10 ("[Section 5225(b)] enables a judgment creditor to initiate special proceedings against transferees to set aside fraudulent transfers made by the judgment debtor." (citation omitted)). Here, in contrast, Plaintiff has not asserted that ABC Corp. wrongfully transferred assets to the Nonparties to avoid paying the judgment entered in this case. Nor has Plaintiff asserted that the Nonparties hold property belonging to ABC Corp., proceeding instead on the theory that ABC Corp. is merely a shell company, and the Nonparties are the ones who have always held the corporation's monetary assets. Therefore, Plaintiff's legal theory is premised not on returning assets once belonging to ABC Corp. to its possession, but rather, on finding the Nonparties independently liable for ABC Corp.'s obligations. See id. at *12-13 (explaining that, if the judgment creditor were to establish that the judgment debtor's principals "were indeed alter egos" of the judgment debtor, "that would suffice to entitle it to a turnover order" where the principals had allegedly transferred money

from the company to themselves "as purported alter egos"); Motorola Credit Corp. v. Uzan, 739 F. Supp. 2d 636, 638-39 (S.D.N.Y. 2010) (examining whether turnover order was appropriate based on previous finding that defendants "shift[ed] funds between various corporations under their direction and control to avoid creditors"); Teamsters Loc. 456 Pension, Health & Welfare, Annuity, Educ. & Training, Indus. Advancement & Legal Servs. Funds v. CRL Transport., Inc., No. 18-CV-2056-KMK, 2020 WL 3619048, at *5 (S.D.N.Y. July 2, 2020) (evaluating turnover order pursuant to Section 5225(b) where Defendant's property was allegedly "re-leased" to a nonparty); CSX Transport., Inc., 79 F.3d at 468 (explaining process for seeking money judgment against non-party garnishees); Levine as Tr. of Marvin H. Schein Descendants' Tr. v. Brown, No. 15-CV-1738, 2020 WL 550653, at *2 (S.D.N.Y. Feb. 4, 2020) (explaining that no dispute existed that the judgment debtor "is entitled to the funds at issue").  For that reason, the cases Plaintiff cites are inapposite.

In addition, even were the Court's ancillary jurisdiction flexible enough to permit an evaluation of Plaintiff's motion to enforce the judgment, the Court declines to exercise that jurisdiction here.  Both state court and separate federal proceedings (to the extent there are independent bases for federal jurisdiction) are available to the interested parties.  The Nonparties here—who are no doubt necessary to resolve the dispute as to whether they act as ABC Corp.'s "alter-ego"—are not joined to this action, nor have they been served with a copy of Plaintiff's motion.  Given that resolution of such dispute would require an assessment of the relationships and dealings among ABC Corp. and the Nonparties—which is beyond the scope of the original action—the Court finds that exercising jurisdiction would constitute an inappropriate use of scarce judicial resources.  See Universitas, 2015 WL 57097, at *4 (finding ancillary jurisdiction would be inappropriate and inefficient over dispute between judgment debtor and non-parties).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to enforce the judgment against nonparties C&L New Ocean Inc., Chong Ri Chen, Ching Y Chen is denied in its entirety. This Memorandum Opinion and Order resolves Docket entry no. 40.

SO ORDERED.

Dated: New York, New York
September 11, 2023

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge